UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF UNITE HERE LOCAL 25 AND HOTEL ASSOCIATION OF WASHINGTON, D.C. PENSION FUND | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 09-1760 (ESH) |
| MR WATERGATE LLC, ET AL. | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiff Board of Trustees of Unite Here Local 25 and Hotel Association of

Washington, D.C. Pension Fund (the "Fund") filed this action to collect pension plan

withdrawal liability from defendants MR Watergate LLC (the "Employer") and PB

Capital Corporation ("PB Capital").  The complaint alleges that the Employer is subject

to outstanding withdrawal liability for its failure to make required payments to the Fund

and that PB Capital is also liable for these delinquent contributions as the Employer's

successor in interest.  Presently before the Court is PB Capital's Rule 12(b)(6) motion to

dismiss for failure to state a claim, which, as explained herein, the Court will grant.

## BACKGROUND

In 2004 the Employer obtained a loan from PB Capital to purchase the famous

Watergate Hotel (the "Hotel") in Washington, D.C.  (Compl. ¶ 21.)  The Employer

entered into a collective bargaining agreement with Unite Here Local 25 of Washington,

D.C. of the Unite Here International Union (the "Union") (*Id.* ¶¶ 1, 4), which provided,

among other things, that the Employer was to make periodic contributions to the Fund.

(*Id.* ¶ 16.)[1]  The Employer initially made the required contributions, but on July 31,

2007, the Employer closed the Hotel and ceased contributing.  (*Id.* ¶ 19.)  The Fund chose

not to impose withdrawal liability at that time against the Employer because the

Employer indicated that it intended to resume operations at the Hotel in February 2010.

(*Id.*)  On June 16, 2009, while the Hotel was still closed, PB Capital notified the

Employer that it had an outstanding balance of $40 million and that PB Capital was

instituting foreclosure proceedings.  (*Id.* ¶ 21.)  On July 21, 2009, PB Capital purchased

the Hotel at the foreclosure sale.  (*Id.* ¶ 22.)  After learning about the foreclosure

proceedings, the Fund determined that the Employer had completely withdrawn and thus

owed the Fund $637,855.85 in withdrawal liability.  (*Id.* ¶ 24.)  The Fund notified the

Employer of this decision and indicated that it would accept payments in quarterly

installments of $46,176.75.  (*Id.*)  The Employer informed the Fund that it would not pay

the withdrawal liability, as it was no longer the owner of the Hotel and was being

dissolved.  (*Id.* ¶ 25.)  Since PB Capital has become the owner, the Hotel has remained

closed and it appears that PB Capital has not undertaken any steps to resume operation of

the Hotel.  (*Id.* ¶¶ 48-51.)

    The Fund brings this action under Sections 502(a)(3) and 515 of ERISA, as

amended, 29 U.S.C. §§ 1132(a)(3) and 1145, and the Multiemployer Pension Plan

Amendments Act of 1980, 29 U.S.C. §§ 1381-1461, for collection of a delinquent

withdrawal liability.  The Fund names PB Capital as a codefendant, alleging that PB

Capital is the Employer's "successor in interest" and is, therefore, liable for the

Employer's withdrawal liability under the successorship doctrine.  (Compl. ¶¶ 48-51.)

---

[1] As described in the complaint, "the Fund is an 'employee benefit plan' as defined in Section 3(3) of [the
Employee Retirement Income Security Act] ERISA, 29 U.S.C. § 1002(3)."  (Compl. ¶ 4.)

## ANALYSIS

### I.    MOTION TO DISMISS STANDARD

As the Supreme Court recently held in *Ashcroft v. Iqbal*:

> [A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' *Id.* at 557.

129 S. Ct. 1937, 1949 (2009).  Under this standard, dismissal is required if the complaint consists only of "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*  The allegations in plaintiff's complaint are presumed true at this stage and all reasonable factual inferences must be construed in plaintiff's favor. *Maljack Prod., Inc. v. Motion Picture Ass'n of Am., Inc.*, 52 F. 3d 373, 375 (D.C. Cir. 1995).  However, "the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F. 3d 1271, 1276 (D.C. Cir. 1994)).

### II.    WITHDRAWAL LIABILITY

When an employer who is part of a multiemployer pension fund fails to make its required contribution, the employer can be subject to "withdrawal liability" in order to "'relieve the funding burden on remaining employers' and to 'avoid creating a severe disincentive to new employers entering the plan.'" *Upholsterers' Int'l Union Pension*

*Fund v. Artistic Furniture of Pontiac*, 920 F. 2d 1323, 1328 (7ᵗʰ Cir. 1990) (quoting

House Committee on Ways & Means, *Multiemployer Pension Plan Amendments Act of*

*1980*, H.R. Rep. No. 96-869, Part I, at 67, 96ᵗʰ Cong., 2d Sess. 15, reprinted in 1980 U.S.

Code Cong. & Admin. News 2918, 2935).  When an employer who is subject to

withdrawal liability sells its assets to another corporation, the common law rule is that the

purchasing corporation does not assume the seller corporation's liabilities, including

withdrawal liability.  *See id.* at 1325 (citing *Travis v. Harris Corp.*, 565 F. 2d 443, 446

(7ᵗʰ Cir. 1977)).  However, to relieve the hardship on Unions "where a predecessor

employer is unable to fulfill its contractual obligation," courts have carved out a

"successorship liability" exception to the common law rule, which provides that the

purchaser of corporate assets can assume the liabilities of the purchased corporation

under certain conditions.  *Id.* at 1329 (internal citations omitted).

      The D.C. Circuit uses the following nine-part test to determine whether a

purchaser of corporate assets is a successor and should be subject to successor liability:

> (1) Whether the successor company had notice of the
> charge, (2) the ability of the predecessor to provide relief,
> (3) whether there has been substantial continuity of
> business operations, (4) whether the new employer uses the
> same plant, (5) whether he uses the same or substantially
> the same work force, (6) whether he uses the same or
> substantially the same supervisory personnel, (7) whether
> the same jobs exist under substantially the same working
> conditions, (8) whether he uses the same machinery,
> equipment and methods of production and (9) whether he
> produces the same products.

*See Sec'y of Labor, Mine Safety and Health Admin. v. Mullins*, 888 F. 2d 1448, 1453-54

(D.C. Cir. 1989) (citing *EEOC v. MacMillan Bloedel Containers, Inc.*, 503 F. 2d 1086,

1094 (6ᵗʰ Cir. 1974)).  The D.C. Circuit has not yet had occasion to apply this test to

pension plan withdrawal liability, but an examination of cases from other circuits reveals

that the determinative factor is whether there has been "substantial continuity of business

operations" since PB Capital became the owner of the Hotel.  *See, e.g.*, *Stotter Div. of*

*Graduate Plastics Co., Inc. v. District 65, United Auto Workers, AFL-CIO*, 991 F. 2d

997, 1001 (2d Cir. 1993); *Central States, Southeast and Southwest Areas Pension Fund v.*

*Wiseway Motor Frieght, Inc.*, 2000 WL 1409825, at *5-6 (N.D. Ill. 2000).  Although

listed as separate factors in the nine-part test, factors (4)-(9) are not usually considered as

distinct elements, but are instead relevant to determining whether the "substantial

continuity of business operations" element has been met.  *See, e.g.*, *Stotter*, 991 F. 2d at

1001 (examining the successor's use of the same employees, equipment, products, and

customers as factors in determining whether there was a "substantial continuity of

identity in the business enterprise before and after [the] change" (internal quotation

omitted)); *Wiseway*, 2000 WL 1409825, at *5-6 ("Substantial continuity is established

where the 'new company has acquired substantial assets of its predecessors and

continued, without interruption or substantial change, the predecessor's business

operations.'" (internal quotation omitted)).

        Here, the Fund argues that PB Capital is a "successor in interest" to the Employer

and, as such, should be held liable for the Employer's withdrawal liability under the

"successorship liability" doctrine.  However, the complaint is devoid of any factual basis,

as it merely alleges that:

>        49.      On or about July 21, 2009, PB Capital Corporation
>                 took control of the Hotel.
>        50.      PB Capital Corporation is continuing the
>                 Employer's business operations, such as they were.

> 51.     By virtue of its status as a successor in interest to
>          the Employer, PB Capital Corporation is liable for
>          the Employer's withdrawal liability.

These allegations are "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.  There are no facts to support

these elements; for example, there are no allegations that PB Capital utilizes the same

management, work force, equipment, or processes as were used by the Employer.  The

complaint against PB Capital, therefore, is nothing more than a "formulaic recitation of

the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Moreover, taking into account the facts as alleged in the complaint, the Fund

cannot, as a matter of law, prove that PB Capital is subject to successor liability.  The

facts establish that PB Capital, in its capacity as lender, foreclosed on real property when

the debtor-Employer failed to meet its repayment obligations.  At the time of foreclosure,

the Hotel was not operating.  After PB Capital purchased the Hotel at the foreclosure

sale, it continued to not operate the Hotel.  It is illogical to suggest that PB Capital

substantially continued the operations of a business which had ceased prior to being

acquired by PB Capital and where PB Capital took no steps to recommence operations.

Substantial continuity of business operations requires the existence of factors such as use

of the same facilities, the same employees, the same supervisors, and the same

equipment.  *See, e.g.*, *Mullins*, 888 F. 2d at 1453-54.  Here, given the undisputed facts,

the Fund cannot satisfy these factors.  Thus, the Fund's allegations against PB Capital fail

to state a cause of action for successor liability, and, therefore, the claim against PB

Capital must be dismissed.[2]

---

[2] Under the nine-part test for successor liability in the D.C. Circuit, the other two factors to be considered—prior notice of the delinquency by the successor and the ability of the predecessor to satisfy

## CONCLUSION

For the reasons stated above, defendant PB Capital's motion to dismiss is granted, and the claim against PB Capital is dismissed with prejudice.  The remaining parties shall file a joint status report by January 18, 2010 and a telephone conference call shall be held with chambers on January 23, 2010 at 11:15 am.  The parties shall jointly call the Court at that time.

      /s/     
ELLEN SEGAL HUVELLE
United States District Judge

Dated: January 6, 2010

---

the liability—also weigh against the Fund.  First, the complaint does not allege that PB Capital had prior notice of the outstanding withdrawal liability against the Employer.  To rectify this deficiency, the Fund's Opposition to Defendant's Motion to Dismiss contains a declaration from John A Boardman, Chairman of the Fund, in which he avers that he discussed the Employer's withdrawal liability with representatives from PB Capital before and after PB Capital purchased the Hotel.  (Pl.'s Opp'n to Def.'s Mot. to Dismiss, Attachment 1 (Declaration of John A. Boardman) ¶ 3.)  Even if this Court were to credit this declaration for purposes of a 12(b)(6) motion to dismiss—which the Court cannot do because the declaration is not part of the complaint—prior notice alone is not sufficient under the D.C. Circuit's nine-part test to establish successor liability, especially where the successor did not actually engage in any business operations.  Second, even though the Employer has no assets with which it can satisfy its withdrawal liability (Compl. ¶ 25), the Fund does not explain why as a matter of policy this burden should fall upon PB Capital, a foreclosing commercial lender who has not operated the Hotel and has no plans to do so.